**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ZHEWEN HU,**<br><br>Plaintiff,<br><br>v.<br><br>**DR. YONGFENG ZHANG,**<br>**AIOS FOUNDATION,**<br><br>Defendants. | Civil Action No. ________<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1. Defendant Dr. Yongfeng Zhang ("Zhang"), a tenured Associate Professor of Computer Science at Rutgers University, used his academic credentials and university affiliation to promote a cryptocurrency token called AIOS ("$AIOS"). $AIOS, short for Artificial Intelligence Operating System, was issued by another Rutgers-affiliated institution of which Defendant was the founding member: the AIOS Foundation ("Foundation"). Zhang and the AIOS Foundation told investors that $AIOS would fund the world's first AI Agent Operating System and a blockchain platform called AIOSChain. They promised transparency, fairness, and development of the AIOSChain. None of it was true, none of the platform's plans came to fruition, and investors in AIOS who believed in Zhang and in the project suffered enormous losses.

2. Plaintiff Zhewen Hu ("Plaintiff") was one such investor. He invested approximately $1 million in $AIOS between January and June 2025, relying on Zhang's credentials, Rutgers University's reputation, publicly available research papers on the technology, and the AIOS Foundation's repeated public assurances about the strength, usefulness, and promise of $AIOS. Since Plaintiff made those investments, the value of $AIOS has collapsed by over 99.6%, AIOSChain was never launched, the promised ecosystem was not built, and the project ceased meaningful development after the token launch—a classic pump and dump scheme that is far too common in the cryptocurrency industry. What is less common is that it was perpetrated by a professor at a premier university.

3. Through their misconduct, Defendants violated federal and state securities laws. The $AIOS token is a security under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), and Defendants offered and sold that security without registration and through material misrepresentations. Plaintiff brings claims under Sections 12(a)(1) and 12(a)(2) of the Securities

Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, and the New Jersey Uniform Securities Law, N.J.S.A. 49:3-47 *et seq.* Plaintiff also brings claims for common law fraud, negligent misrepresentation, violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, breach of fiduciary duty, and civil conspiracy. He seeks compensatory damages, treble damages, rescission, disgorgement, and all other relief the Court deems just.

**THE PARTIES**

4. Plaintiff is a citizen of St. Kitts and Nevis. Between January 11, 2025 and June 24, 2025, he purchased approximately $1 million in $AIOS tokens in reliance on Defendants' public statements. Plaintiff personally suffered the losses alleged below and brings this action only for his own purchases.

5. Defendant Dr. Yongfeng Zhang is a tenured Associate Professor of Computer Science at Rutgers University, domiciled in New Jersey. He holds a Ph.D. from Tsinghua University, and his research focuses on machine learning, artificial intelligence agents, and data mining. Zhang is a co-founder, principal, and director of the AIOS Foundation.

6. Defendant AIOS Foundation is an unincorporated association that, upon information and belief, operates from New Jersey. It developed the AIOS project, issued and promoted the $AIOS token, and conducted promotional activities—including "hackathons," i.e., intense, time-limited events lasting upwards of 48 hours, during which programmers, designers, and project managers collaborate rapidly to build functional software or hardware prototypes on the Rutgers campus—from New Jersey.

**JURISDICTION AND VENUE**

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under Sections 5, 12(a), and 15 of the Securities Act of 1933, 15 U.S.C. §§

77e, 77l, 77o, and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a). The Court also has jurisdiction under 15 U.S.C. §§ 77v(a) and 78aa.

8. This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a)(2). Plaintiff is a citizen of St. Kitts and Nevis. Zhang and the AIOS Foundation are citizens of New Jersey. Complete diversity exists, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff alternatively relies on the federal-question and supplemental jurisdiction alleged above.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state-law claims, because they arise from the same case or controversy as the federal claims and form part of the same nucleus of operative facts.

10. This Court has personal jurisdiction over all Defendants. Zhang is domiciled in New Jersey and committed acts giving rise to this action here. The Foundation purposefully directed its operations, including the offer and promotion of $AIOS, from New Jersey, collaborated with Zhang at Rutgers, and conducted promotional events on Rutgers facilities in New Jersey. Plaintiff's claims arise from or relate to those contacts.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2). Zhang resides in this District, and the Foundation is subject to personal jurisdiction here and therefore resides here for venue purposes under § 1391(c)(2). A substantial part of the events giving rise to Plaintiff's claims also occurred here, including the New Jersey-based promotion and offering alleged above.

## STATEMENT OF FACTS

### A. Background: Cryptocurrency and Blockchain Technology

12. Cryptocurrency is a digital asset that uses encryption to secure transactions on decentralized computer networks. Unlike traditional money issued by governments, anyone with sufficient technical knowledge can create a cryptocurrency token.

13. Tokens are created, bought, sold, and transferred on a "blockchain"—a permanent public digital ledger that records every transaction.

14. Solana is a public, permissionless blockchain network on which digital assets can be created, transferred, and traded. Solana uses its native asset, SOL, to pay transaction fees and uses on-chain programs to process transactions. On Solana, a token is identified by a unique smart contract address. The issuer or other authorized account can establish the minting of the token, set parameters such as supply and decimal precision, and allocate or transfer tokens to wallets. Depending on the authorities retained, an authorized account may also be able to mint additional tokens, freeze accounts, or alter certain metadata.

15. In this Complaint, references to the $AIOS "smart contract address" or "token contract" refer to the Solana contract address 5QS7RcHfGUa2ZtrovPvEJMB9coqroiT7H48dPSwFpump with the ticker $AIOS and entitled "Real AIOS Foundation." The issuer or promoter must also communicate the correct contract address so prospective purchasers can find the intended asset rather than an impersonator's token.

### B. The AIOS Project and Zhang's Role

16. The Foundation advertised itself as developing AIOS powered by large language models ("LLMs")—artificial intelligence systems trained on vast quantities of text data. The

project claimed to create an operating system that would allow AI "agents" (autonomous software programs) to run efficiently and interact with one another.

17. Zhang was the driving force behind the Foundation. His research at Rutgers focuses on machine learning, AI agents, and data mining—areas directly aligned with the project's stated goals.[1] Zhang published multiple papers regarding this technology, which used his Rutgers credentials and affiliation.

18. Zhang did not merely publish documents concerning the benefits of AI. Rather, he repeatedly and publicly promoted the AIOS project, including on his personal X (formerly known as Twitter) account.







19. On March 25, 2024, Zhang and Rutgers collaborators published "AIOS: LLM Agent Operating System,"[2] claiming their technology achieved "up to 2.1x faster execution" and

[1] Rutgers University Department of Computer Science, *Yongfeng Zhang*, https://www.cs.rutgers.edu/people/professors/details/yongfeng-zhang.

[2] Yongfeng Zhang et al., *AIOS: LLM Agent Operating System*, arXiv:2403.16971, at 1 (2024), https://arxiv.org/pdf/2403.16971. The Rutgers collaborators include Kai Mei, Xi Zhu, Wujiang Xu, Mingyu Jin, Wenyue Hua, Zelong Li Shuyuan Xu, Ruosong Ye, and Yingqiang Ge from the Department of Computer Science at Rutgers University.

"significantly improves execution efficiency." The paper listed Zhang's affiliation at Rutgers University.

20. Zhang co-authored a second paper, "LLM as OS, Agents as Apps: Envisioning AIOS, Agents, and the AIOS-Agent Ecosystem,"[3] describing AIOS as a "revolutionary AIOS-Agent ecosystem" and a "paradigm shift from the traditional OS-APP ecosystem"—an "(Artificial) Intelligent Operating System ... with soul." Both papers promised continued development, described "crucial future research directions," and claimed to "catalyz[e] future innovations and expand the [AIOS] architecture."

21. Zhang leveraged his Rutgers credentials and academic reputation to lend credibility to the project. Investors, including Plaintiff, saw a tenured professor at a major American research university staking his professional reputation on the technology and Foundation.

22. The Foundation maintained a GitHub repository[4] (agiresearch/AIOS) and a webpage[5] that presented formal academic backing from Rutgers University. On July 13, 2024, the AIOS Foundation tweeted: "Welcome to AIOS Foundation, towards the next generation AIOS for LLM Agent Operating Systems and the AIOS-Agent Ecosystem." The repository displayed 45 contributors, over 5,000 stars, and 663 forks, signaling active development and broad community interest.

23. On December 4, 2024, the AIOS Foundation promoted a hackathon on its official X account: "Welcome to AIOS Hackathon -- come and learn about AIOS, the world's first AI Agent Operating System, and build your own agents!" The hackathon was held the following day, December 5, 2024, on the Rutgers campus at 96 Frelinghuysen Road, Piscataway, New Jersey

[3] Yongfeng Zhang et al., *LLM as OS, Agents as Apps: Envisioning AIOS, Agents and the AIOS-Agent Ecosystem*, arXiv:2312.03815, at 1 (2023), https://arxiv.org/pdf/2312.03815.
[4] AIOS Research, *AIOS*, GitHub, https://github.com/agiresearch/AIOS.
[5] AIOS Foundation, *Team*, https://www.aios.foundation/team.html.

08854, in CoRE 301. It was presented by Rutgers researcher Om Raheja, Rutgers business student Joshua Park, and Zhang.




24. These activities plausibly conveyed that AIOS was a serious project associated with Rutgers and supported by academic research. The Rutgers affiliations, public research papers, campus hackathon, repository, and website were material to the project's credibility and to Plaintiff's later investment decision. But it was Zhang, personally, who conceived, directed, and controlled the entire enterprise.

25. Indeed, the AIOS Foundation was, at all relevant times, the alter ego of Zhang. Zhang so dominated and controlled the Foundation that it had no separate existence and functioned merely as his instrumentality. Among other things: (a) Zhang was a co-founder and principal of the Foundation; (b) Zhang directed the Foundation's management, policies, promotional activities, token launch, supply announcements, and public communications; (c) Zhang was the driving intellectual and promotional force behind the Foundation; and (d) the Foundation's team consisted almost entirely of Zhang's Rutgers students and research assistants, whom Zhang supervised in his capacity as a professor.

## C. The $AIOS Token Launch and Promotional Campaign

26. On January 10, 2025, the AIOS Foundation launched the $AIOS cryptocurrency token on the Solana blockchain. The Foundation announced the launch on its official X page with the following statement: "Since too many fake profiles impersonate AIOS Foundation to launch fake tokens, we have decided to launch the real Official $AIOS token, to protect both AIOS and the Web3 community. Please check out the following CA: 5QS7RcHfGUa2ZtrovPvEJMB9coqroiT7H48dPSwFpump."




27. These mechanics matter here because the Foundation did not merely describe an abstract research project. It identified a particular on-chain asset as the "real Official $AIOS token," published the corresponding address, and directed the public to acquire that asset. That public identification connected the Foundation's representations about AIOS's technology, ecosystem, token supply, and AIOSChain to a specific tradable asset. Indeed, the Foundation paired that identifier with the architecture diagram, thereby linking the token sale to the promised AIOS technology and ecosystem.

28. The announcement included an architecture diagram showing the AIOS system layers, reinforcing the impression that $AIOS was backed by genuine technology and would be integrated into the broader Foundation ecosystem. The Foundation pinned this tweet to the top of its official X profile page and placed the unique smart contract address in its profile header, ensuring maximum visibility to potential investors.

29. The following day, January 11, 2025, the AIOS Foundation published a statement: “The AIOS Foundation is focused on building a lasting AIOS-Agent Ecosystem. New features and products are in progress.”

30. On that same day, the AIOS Foundation further stated: “We will not sell a single $AIOS without consulting the community.” This representation was designed to assure investors that their holdings would not be diluted or destroyed by undisclosed insider selling.

31. On January 14, 2025, the AIOS Foundation published a post titled “Burn, Chain, and Plan” making additional material representations. “Burning” tokens means permanently destroying them. Projects sometimes burn tokens to reduce supply and signal long-term commitment to investors. Specifically, the Foundation stated: “To further enhance the transparency and fairness of the AIOS community, and to advance the AIOS project with the highest standard of integrity,” the AIOS Foundation announced it would “BURN ALL foundation owned $AIOS tokens on Solana,” specifically 640,338,709.677419 $AIOS (representing 64.03% of total supply) and 25,858,693.947972 $AIOS (representing 2.58% of total supply) “within the next 24 hours.”

32. The January 14 post also announced the upcoming launch of the “#AIOSChain” mainnet. It stated that circulating $AIOS tokens on Solana would have the option to migrate to

AIOSChain, and that a portion of native $AIOS on AIOSChain proportional to the burned amount on Solana would be minted and permanently locked for staking on AIOSChain.

33. The promise to burn over 66% of the total token supply, combined with the announcement of a dedicated blockchain (AIOSChain), was designed to signal scarcity, commitment, and long-term technological development. These representations induced further investment by existing and new token holders, including Plaintiff.

34. The Foundation's launch campaign thus presented $AIOS as an investment in a coordinated project: buyers were directed to a specific token, shown an architecture for the proposed technology, told that a lasting ecosystem and new products were in progress, and told that scarcity, migration, native-token use, and staking would follow. The campaign sought to create demand for the token by tying its value to Defendants' future ecosystem-development efforts.

**D. AIOSChain and Continued Promises**

35. Through these representations, the Foundation and Zhang represented that they would build the AIOS-Agent Ecosystem and launch AIOSChain, with $AIOS serving a central role. On information and belief, after the failed launch of $AIOS, the Foundation and Zhang deleted or hid certain posts from public view.

36. AIOSChain gave investors like Plaintiff confidence that $AIOS had long-term value: a dedicated blockchain would create demand for the token as its native currency and demonstrate genuine technological progress.

37. None of these promised developments materialized; AIOSChain was never launched, and the promised ecosystem and new features were not delivered. The project ceased meaningful development after launch.

38. On information and belief, at the time Defendants made these statements, the Foundation and Zhang either knew these representations were false when made or acted with reckless disregard for their truth.

**E. Plaintiff's Investment and Losses**

39. Between January 11 and June 24, 2025, Plaintiff purchased approximately $1 million worth of $AIOS tokens.

40. Plaintiff relied on the Foundation's public statements, Zhang's academic credentials and Rutgers affiliation, the publicly-available research papers, the AIOSChain promises, and the assurances of transparency and ongoing development of AIOS.

41. But for Zhang's Rutgers affiliation and the academic literature bearing Rutgers's name, Plaintiff would not have purchased $AIOS. The combination of a tenured professor at a major research university, publicly-available research papers, campus hackathons, and institutional branding created a false sense of legitimacy that was central to his investment decision.

42. The value of $AIOS has collapsed by over 99.6%. As of the filing of this Complaint, $AIOS trades at approximately $0.0002272, down from a peak of approximately $0.12–$0.14 in January and February 2025. The decline followed Defendants' failure to deliver AIOSChain and the promised ecosystem. Plaintiff does not rely on the price pattern alone to establish fraud or loss causation.

43. After accounting for any sale proceeds, distributions, and the approximate value of any remaining tokens, Plaintiff's out of pocket loss is at least $1,038,270.

44. As of the filing of this Complaint, the market capitalization of $AIOS is approximately $87,000, with approximately 333,740,000 tokens circulating out of a maximum

supply of 1,000,000,000. The token's market value is negligible compared with the amounts Plaintiff paid.

**F. Blockchain Evidence Corroborating Plaintiff's Claims**

45. Every $AIOS transaction is recorded on the Solana blockchain and is publicly verifiable through blockchain explorer services such as Solscan.io.

46. Plaintiff's transactions were conducted through wallet addresses publicly verifiable on the Solana blockchain. The smart contract address of the $AIOS token that Plaintiff purchased is 5QS7RcHfGUa2ZtrovPvEJMB9coqroiT7H48dPSwFpump—the same address the Foundation prominently displayed in its official announcements and social media profile.

**G. Rutgers's Role and Responsibility Created Legitimacy of the Project**

47. Rutgers employed Zhang as a tenured Associate Professor throughout the relevant period. His promotion of AIOS used Rutgers-identified research, his academic title, and Rutgers campus facilities, as described below.



48. Eleven of the twelve individuals on the AIOS Foundation's team page are directly affiliated with Rutgers. In addition to Zhang, team members Kai Mei, Mingyu Jin, Wenyue Hua, Jian Mu, Wujiang Xu, and Zeru Shi were Ph.D. candidates at Rutgers University at all relevant times. Joshua Park was a student at the Rutgers Business School. Balaji Rama, Om Raheja, and Manan Shukla were research assistants at Rutgers at all relevant times.

49. Zhang's academic papers promoting AIOS listed his affiliation as Rutgers University. These papers were published in academic venues and made available to the public, lending the full weight of Rutgers's institutional reputation to the AIOS project.

50. The Foundation held at least one live hackathon on the Rutgers campus, at 96 Frelinghuysen Road, Piscataway, New Jersey 08854, in CoRE 301, on December 5, 2024. The event was presented by Zhang alongside other team members.

51. The Foundation's GitHub repository (agiresearch/AIOS) and associated webpage presented formal academic backing from Rutgers, further cementing the connection between the university and the project in the minds of investors.

52. Rutgers allowed the December 5, 2024 hackathon to be held on its campus and publicly displayed Zhang's university affiliation in the papers and other materials described above. On information and belief, Rutgers knew or should have known that Zhang was using that affiliation to promote a cryptocurrency token to the investing public.

## CAUSES OF ACTION

### COUNT I
**Sale of Unregistered Securities and Liability Under Section 12(a)(1) of the Securities Act of 1933 (15 U.S.C. §§ 77e, 77l) (Against Zhang and AIOS Foundation)**

53. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

54. The $AIOS token is a "security" within the meaning of Section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1), and Section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10). Both statutes define "security" to include an "investment contract."

55. Under the test established by the Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946), an "investment contract" exists where there is (1) an investment of money, (2) in a common enterprise, (3) with an expectation of profits, (4) derived from the efforts of others. The $AIOS token satisfies each element.

56. Plaintiff invested approximately $1 million to purchase $AIOS tokens between January 11, 2025 and June 24, 2025. Other purchasers similarly invested money to acquire $AIOS tokens on the open market.

57. The Foundation, with Zhang's participation, directed the token's development, supply announcements, and promotional activities toward one project. The value of all $AIOS holders' tokens rose or fell with the project's success, and purchasers' fortunes were linked through the common token, the promised ecosystem, and the Foundation's control of the project's development. The Foundation's promised burn and migration would affect holders through the same token supply and project demand, while the Foundation and Zhang controlled the development efforts on which those conditions depended.

58. The AIOS Foundation marketed $AIOS as funding "research and development" of "the world's first AI Agent Operating System." The Foundation promised to build AIOSChain, a dedicated blockchain. It promised a "lasting AIOS-Agent Ecosystem." It stated that "new features and products are in progress." These representations created a reasonable expectation among purchasers, including Plaintiff, that the value of $AIOS would increase as the promised technology was developed and AIOSChain launched.

59. The Foundation also promised to burn more than 66% of supply. Those representations conveyed that purchasers could benefit from scarcity and price appreciation as the project developed.

60. At the time of Plaintiff's purchases, AIOSChain and the promised ecosystem were not operational, and the token's announced utility depended on the Foundation's and Zhang's future managerial and entrepreneurial efforts. Purchasers could not direct those efforts or cause AIOSChain, the ecosystem, or the promised features to be built.

61. At the time Plaintiff purchased $AIOS, the essential value-creating work remained in the future: developing the AIOS technology and products, launching and maintaining AIOSChain, implementing any migration or staking program, carrying out the promised supply measures, and building an active ecosystem capable of generating demand. Purchasers had no practical ability to perform those tasks for themselves or to substitute their own efforts for Defendants' efforts.

62. Plaintiff therefore purchased $AIOS in the expectation that its value would increase if Defendants fulfilled those commitments. The token's technical transferability on Solana supplied a mechanism for trading; it did not supply the promised AIOS utility, create the ecosystem, or eliminate Plaintiff's dependence on the Foundation and Zhang.

63. The $AIOS token was never registered as a security with the U.S. Securities and Exchange Commission. No registration statement was filed with the SEC in connection with the offer or sale of $AIOS. Plaintiff is informed and believes that Defendants did not identify or rely on any registration exemption for the public offer alleged here. Defendants bear the burden of establishing any exemption as an affirmative defense.

64. By publishing the token address and soliciting purchases through its official X account, website, and other promotional channels, Zhang and the Foundation offered and sold $AIOS to the public, including Plaintiff. Plaintiff purchased after receiving or seeing those solicitations.

65. Plaintiff purchased $AIOS from or as a direct result of Defendants' solicitation and was the person to whom the securities were sold within the meaning of Section 12(a)(1).

66. Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), provides that any person who offers or sells a security in violation of Section 5 is liable to the purchaser for rescission or damages. This is a strict liability claim. No showing of scienter or reliance is required.

67. Plaintiff is entitled to rescission of his purchases of $AIOS and recovery of the consideration paid (approximately $1 million), plus interest, less any amounts received.

## **COUNT II**
### **Material Misstatements in Connection with the Sale of Securities in Violation of Section 12(a)(2) of the Securities Act of 1933 (15 U.S.C. § 77l(a)(2)) (Against Zhang and AIOS Foundation)**

68. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

69. Zhang and the AIOS Foundation offered and sold $AIOS in a public offering through written and oral communications disseminated by the Foundation's official X account, website, GitHub, promotional materials, and events. Those communications were part of the

offering and contained untrue statements of material fact and omitted material facts necessary to make the statements not misleading. Zhang solicited purchases as the Foundation's principal and promoter for the Foundation's financial or economic benefit.

70. Material misstatements and omissions include: (a) that on January 11, 2025, AIOS was a "revolutionary" technology with real capabilities, including "up to 2.1x faster execution"; (b) that $AIOS would fund genuine research and development of "the world's first AI Agent Operating System"; (c) that team members were "not allowed to own or trade $AIOS for personal use"; (d) that AIOSChain would be launched and $AIOS holders could migrate their tokens to that chain; (e) that the Foundation would "not sell a single $AIOS without consulting the community"; and (f) that "new features and products are in progress." Each statement was material because it concerned the project's capabilities, use of proceeds, token supply, promised utility, or future development.

71. These communications were made through tweets on the Foundation's official X account, academic papers posted publicly, promotional materials, and the Foundation's GitHub and website. The Foundation and Zhang caused or authorized their dissemination to prospective purchasers including by linking the token address and project materials through the official channels.

72. Plaintiff did not know of the untruths and omissions at the time of purchase.

73. Plaintiff did not know, and in the exercise of reasonable care could not have known, that these statements were untrue or that the omitted facts made them misleading when he purchased.

74. Plaintiff seeks rescission or damages under Section 12(a)(2), subject to statutory offsets and an election of remedies.

**COUNT III**
**Securities Fraud in Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5)**
**(Against Zhang and AIOS Foundation)**

75. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

76. In connection with the purchase and sale of $AIOS, Defendants through the Foundation's official X account, website, GitHub, promotional materials, and Zhang's public statements and papers: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and omitted material facts necessary to make statements not misleading; and (c) engaged in acts, practices, and courses of business that operated as a fraud upon purchasers, in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

77. Defendants acted with scienter. They knew or recklessly disregarded that their representations were false and that the AIOS project would not be developed as promised. The Foundation announced a detailed roadmap, promised to burn tokens, pledged to build AIOSChain, and committed to transparent use of funds. None of these promises were fulfilled. The pattern of conduct demonstrates that Defendants either intended to deceive investors or were recklessly indifferent to the truth.

78. Plaintiff actually and reasonably relied on Defendants' misrepresentations, including the Foundation's January 2025 statements about the token, ecosystem, insider sales, token burn, and AIOSChain, and on the Rutgers-affiliated materials Defendants used to promote the project, when making his purchases. Without those statements and the credibility Defendants conveyed, Plaintiff would not have purchased.

79. As a direct and proximate result of Defendants' violations of Section 10(b) and Rule 10b-5, Plaintiff suffered damages of at least $1,038,270.

**COUNT IV**
**Control Person Liability Under Section 15 of the Securities Act of 1933 (15 U.S.C. § 77o) and Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a))**
**(Against Zhang)**

80. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

81. Zhang was a "control person" of the Foundation within the meaning of Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o, and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), because he was a co-founder and principal with actual power to direct the Foundation's management, policies, token launch, supply announcements, and public communications.

82. He exercised that control by directing, approving, or participating in the Foundation's promotional activities, including its public statements, academic publications, social media communications, and decision to launch and promote $AIOS.

83. Zhang used his academic position and credentials to lend credibility to the AIOS project and to induce investor confidence. He directly participated in the alleged primary violations and was not a passive participant; he was the driving intellectual and promotional force behind the project.

84. The Foundation is alleged to be primarily liable for the Securities Act and Exchange Act violations in Counts I, II, and III. As a control person, Zhang is jointly and severally liable for the violations committed by the Foundation.

**COUNT V**
**Violation of the New Jersey Uniform Securities Law**
**N.J.S.A. 49:3-52, 49:3-56, and 49:3-71**
**(Against Zhang and AIOS Foundation)**

85. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

86. The $AIOS token constitutes a “security” within the meaning of N.J.S.A. 49:3-49.

87. The $AIOS token was not registered with the New Jersey Bureau of Securities or any other state securities regulator.

88. Defendants offered and sold $AIOS in or from New Jersey. The Foundation directed its official offering and promotional activities from New Jersey. Zhang promoted $AIOS using his New Jersey-based university affiliation; and the Foundation conducted the Rutgers-campus hackathon in New Jersey. Plaintiff purchased in response to offers disseminated from or through those New Jersey contacts.

89. By offering and selling $AIOS in or from New Jersey without the required registration, Zhang and the Foundation violated N.J.S.A. 49:3-56(a).

90. Defendants violated N.J.S.A. 49:3-52(b) by making untrue statements of material fact and omitting material facts necessary to make the statements not misleading in connection with the offer and sale of $AIOS.

91. Defendants violated N.J.S.A. 49:3-52(c) by engaging in acts, practices, and courses of business that operated as a fraud upon purchasers of $AIOS.

92. The New Jersey Uniform Securities Law definition of “fraud” is not limited to common law fraud. It encompasses the full range of Defendants’ deceptive conduct alleged herein.

93. Pursuant to N.J.S.A. 49:3-71, Plaintiff is entitled to damages, rescission, and such other relief as the Court deems appropriate.

## COUNT VI
**Common Law Fraud**
**(Against Zhang and AIOS Foundation)**

94. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

95. "The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350, 367 (1997).

96. Zhang and the Foundation made material misrepresentations of fact to the investing public, including representations that $AIOS proceeds would fund genuine research and development, that team members could not trade the token for personal use, that the Foundation would not sell tokens without community consultation, that AIOSChain would be launched, and that the AIOS-Agent Ecosystem would be built.

97. These statements were false or misleading when made. Defendants knew or recklessly disregarded their falsity. To the extent the statements were promises of future action, Defendants made them without present intent or reasonable basis to perform.

98. Defendants made these representations with the purpose of inducing prospective purchasers, including Plaintiff, to purchase and retain $AIOS and to increase demand for the token.

99. Plaintiff saw or reviewed the statements before making the purchases alleged, and justifiably relied on these representations in purchasing approximately $1 million worth of $AIOS tokens.

100. As a direct and proximate result of Defendants' fraud, Plaintiff suffered damages of at least $1,038,270.

**COUNT VII**
**Negligent Misrepresentation (Pled in the Alternative)**
**(Against Zhang and AIOS Foundation)**

101. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

102. To state a claim for negligent misrepresentation, a plaintiff must show "(1) an incorrect statement, (2) negligently made, (3) upon which plaintiff justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance." *Mason v. Coca–Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011).

103. Defendants made incorrect statements of material fact to Plaintiff and the investing public, including that AIOS was a "revolutionary" technology capable of "2.1x faster execution," that $AIOS would fund genuine research and development, that insiders would not trade the token, that the Foundation would not sell tokens without community approval, and that AIOSChain would be launched. None of these statements were true, or they were made without reasonable basis.

104. Defendants were engaged in developing, issuing, and promoting the $AIOS project and supplied information to prospective purchasers for the purpose of guiding purchase decisions and in connection with a transaction in which they had a pecuniary interest. Plaintiff was within the intended audience for that information. Defendants therefore owed a duty to exercise reasonable care in verifying the statements and omissions they used to solicit purchases.

105. Plaintiff justifiably relied on these identified statements and omissions in making the purchases alleged above.

106. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff suffered damages of at least $1,038,270.

**COUNT VIII**
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. 56:8-1 et seq.**
**(Against Zhang and AIOS Foundation)**

107. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

108. The New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 et seq., prohibits any "unconscionable [commercial practice,] deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact" in connection with the sale or advertisement of merchandise. N.J.S.A. 56:8-2. Plaintiff purchased $AIOS as a consumer for personal investment and not for resale, and Defendants advertised and sold it to the public as a product offered for sale.

109. Zhang and the Foundation engaged in unconscionable commercial practices, deception, and fraud in connection with the sale and advertisement of $AIOS by making the specific statements identified above concerning technological development, burning of token supply, AIOSChain development, and transparent use of investor funds.

110. Zhang and the Foundation knowingly concealed and suppressed material facts, including that AIOSChain was not operational or likely even in development, promised ecosystem and features had not been delivered, and no spending or development plan had been shared. Because Defendants made partial statements about the token's utility, supply, and development and controlled the relevant information, these omissions made their statements misleading. .

111. Plaintiff suffered an ascertainable loss of at least $1,038,270 as a result of these unlawful practices.

112. Under N.J.S.A. 56:8-19, Plaintiff is entitled to treble damages, attorneys' fees, and costs.

**COUNT IX**
**Breach of Fiduciary Duty / Constructive Fraud (Pled in the Alternative)**
**(Against Zhang)**

113. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

114. Zhang was a principal of the Foundation and exercised discretionary control over matters materially affecting token holders, including the token launch, supply announcements, promised uses, development, and migration to AIOSChain. He expressly undertook to develop the AIOS-Agent Ecosystem, launch AIOSChain, burn foundation-owned tokens, consult the community before selling tokens, and use token proceeds for the stated project purposes. Plaintiff relied on those undertakings because token holders had no ability to direct the project's development.

115. The relationship and undertakings alleged above imposed duties of loyalty, candor, good faith, and fair dealing with respect to the matters Zhang undertook to control or disclose.

116. Zhang breached those duties by making false representations to induce investment, failing to develop the project as promised, and failing to use token proceeds for the stated purposes.

117. As a direct and proximate result of Zhang's breach of fiduciary duty, Plaintiff suffered damages of at least $1,038,270.

**COUNT X**
**Civil Conspiracy**
**(Against Zhang and AIOS Foundation)**

118. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

119. Zhang and the AIOS Foundation agreed and conspired to defraud investors, including Plaintiff, by creating and promoting the $AIOS token through false representations of technological development, institutional backing, and financial integrity. The agreement is inferred from their coordinated roles: the Foundation issued and marketed the token and operated the official channels, while Zhang served as a principal, promoted the project, and appeared at the Rutgers-campus hackathon.

120. In furtherance of this conspiracy, Zhang and the AIOS Foundation committed the overt acts described herein, including publishing misleading academic papers, issuing false public statements about token use and development plans, conducting promotional hackathons, and launching the $AIOS token.

121. As a direct and proximate result of this conspiracy, Plaintiff suffered damages of at least $1,038,270.

**PRAYER FOR RELIEF**

122. WHEREFORE, Plaintiff Zhewen Hu respectfully requests that this Court enter judgment against Defendants and award the following relief:

a) Compensatory damages in an amount to be proven at trial, presently estimated at not less than $1,038,270;

b) Rescission of Plaintiff's purchases of $AIOS and return of all consideration paid, plus interest, pursuant to Sections 12(a)(1) and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l (a)(1)-(a)(2);

c) Damages pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5;

d) Damages or rescission pursuant to the New Jersey Uniform Securities Law, N.J.S.A. 49:3-71;

e) Treble damages pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-19;

f) Punitive damages in an amount to be determined at trial;

g) Disgorgement of all profits obtained by Defendants through their unlawful conduct;

h) Pre-judgment and post-judgment interest at the maximum rate permitted by law;

i) Attorneys' fees and costs of suit pursuant to N.J.S.A. 56:8-19 and any other applicable authority; and

j) Such other and further relief as this Court deems just and proper.

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

Pursuant to Local Civil Rule 11.2, Plaintiff by its undersigned counsel, hereby certifies on information and belief that the matter is controversy is not subject of other actions pending in any court or of any pending arbitration or administrative proceeding. Plaintiff is not currently aware of any other party that should be joined in this action.

**CERTIFICATION PURSUANT TO L. CIV. R. 201.1(D)(3)**

I, Jessica Greer Griffith, certify, pursuant to Local Civil Rule 201.1(d)(3), that the above-captioned matter is not appropriate for compulsory arbitration because the damages recoverable exceed the sum of $150,000.00 exclusive of interest and costs and any claim for punitive damages. I certify under penalty of perjury that the foregoing is true and correct.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

August 28, 2026

**McDermott Will & Schulte LLP**

*/s/ Jessica Greer Griffith*
Jessica Greer Griffith (NJ ID 126432014)
Steven T. Knipfelberg (NJ ID 041082009)
Joseph B. Evans (*pro hac vice* application forthcoming)
M. Elias Berman (*pro hac vice* application forthcoming)
Daniel H. Kaltman (*pro hac vice* application forthcoming)
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
ggriffith@mcdermottlaw.com
sknipfelberg@mcdermottlaw.com
jbevans@mcdermottlaw.com
eberman@mcdermottlaw.com
dkaltman@mcdermottlaw.com

*Attorneys for Plaintiff*